QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Cal. Bar No. 219032)
seanpak@quinnemanuel.com
Ognjen Zivojnovic (Cal. Bar No. 254886)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 (facsimile)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Patrick D. Curran (Cal. Bar No. 241630)
patrickcurran@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
(617) 712-7200 (facsimile)

Attorneys for Plaintiff TikTok Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIKTOK INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>ALMONDNET, INC., and<br>INTENT IQ, LLC,<br><br>        Defendants. | CASE NO. 4:25-cv-5721<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TikTok Inc. ("TikTok") seeks a declaration that TikTok does not directly or indirectly infringe United States Patent Nos. 8,200,822 (the "'822 patent"), 10,839,423 (the "'423 patent"), and 8,677,398 (the "'398 patent") (collectively, the "Asserted Patents"), either literally or under the doctrine of equivalents:

## NATURE OF THE ACTION

1.    This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgment Act.

2.    Plaintiff TikTok requests this relief because defendants AlmondNet, Inc. and Intent IQ, LLC (collectively, "AlmondNet") have baselessly accused TikTok of infringing the Asserted Patents.

3.    Specifically, AlmondNet recently filed a lawsuit in the District of Delaware, Civil Case No. 1:25-cv-00611 (the "AlmondNet Delaware Action"), alleging that the TikTok application and various services supporting the TikTok application infringe the Asserted Patents, including allegations that TikTok's computer systems that implement and provide TikTok Ads Manager (including but not limited to components such as Automatic Placement, Select Placement, Event API, TikTok Pixel, Value-Based Optimization, Smart Performance Campaign, Advanced Matching, Pangle, Attribution Analytics, Cross-Channel and/or Cross-media measurement, Mobile Measurement Partner Tracking, Traffic campaign objectives, SRN Integration, Lift measurement, Click ID (TTCLID), View data, reach settings, and frequency settings) (collectively, the "Accused TikTok Instrumentalities") infringe the Asserted Patents.

4.    AlmondNet's baseless assertion of infringement has created a justiciable controversy between TikTok and AlmondNet.

5.    As explained in more detail below, while the AlmondNet Delaware Action is

1    currently pending, venue in Delaware is improper as to TikTok, and AlmondNet did not properly

2    serve TikTok.  TikTok thus intends to move to dismiss the AlmondNet Delaware Action for lack of

3    personal jurisdiction, improper service, and lack of venue, or alternatively to transfer the AlmondNet

4    Delaware Action to the Northern District of California. Once that action is dismissed or transferred,

5    the parties' controversy as to the Asserted Patents can and should be adjudicated here.[1]

6                                    **THE PARTIES**

7           6.      TikTok Inc. is a California Corporation with its principal place of business at 5800

8    Bristol Parkway, Suite 100, Culver City, CA 90230.  The majority of TikTok's engineers in the

9    United States, however, work out of the San Jose, California office, located at 1199 Coleman

10   Avenue, San Jose, CA 95110.

11          7.      On information and belief, AlmondNet, Inc. is a corporation organized and existing

12   under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite

13   404, Long Island City, NY, 11101.

14          8.      On information and belief, Intent IQ, LLC is a Delaware limited liability company,

15   having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101.

16                              **JURISDICTION AND VENUE**

17          9.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under

18   the patent laws of the United States, 35 U.S.C. §§ 100-390.

19

20          [1] TikTok is filing this action for declaratory judgment in order to ensure AlmondNet cannot

21   voluntarily dismiss its Delaware case under Federal Rule of Civil Procedure 41 and then file a
     second suit in an improper venue. TikTok anticipates that the suit currently pending in the District

22   of Delaware will be dismissed. Once that occurs, this case would proceed. Or, if the AlmondNet
     Delaware Action is alternatively transferred to the Northern District of California, then it can be

23   consolidated with this declaratory judgment action on the same patents. But TikTok is also mindful
     of the need to avoid duplicative litigation and the importance of conserving judicial resources. If the

24   District of Delaware concludes that the case currently pending in Delaware should proceed in that
     district, TikTok will voluntarily dismiss this declaratory judgment action.

25

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

11.    This Court has personal jurisdiction over AlmondNet based on AlmondNet's contacts with this district, including directing licensing demands related to the Asserted Patents to California (including companies located in this district), litigating the Asserted Patents and their family members in California district courts (including in the Northern District of California), engaging in business in California, and engaging and instructing counsel in California to engage in and assist with these activities.

12.    AlmondNet has repeatedly directed licensing demands into California, including in this district, in connection with the Asserted Patent families at issue in this case. Those licensing demands sent to companies in this district have led to litigations—now pending in this district—over the Asserted Patent families.

13.    For example, on information and belief, after AlmondNet sent licensing demands to companies in this district, AlmondNet filed litigations on the Asserted Patents that are now pending in this district—and these pending AlmondNet litigations in this district all involve the exact same Asserted Patents (indicated below in **bold**) or patents within the same families as the Asserted Patents (indicated below in *underline*):

- *AlmondNet, Inc., et al. v. Samsung Electronics Co., Ltd., et al.* (Civil Case No. 4:22-cv-07515-JST) ("Samsung"), involving U.S. Patent Nos. 10,321,198, *10,715,878*, 7,979,307, **8,200,822**, 8,244,582, 8,566,164, *8,671,139*, **8,677,398**, and *8,959,146*;

- *AlmondNet, Inc., et al. v. Meta Platforms, Inc.* (Civil Case No. 4:22-cv-08911-JST) ("Meta I"), involving U.S. Patent Nos. 7,822,639, 8,244,582, 8,244,586, *8,671,139*, **8,677,398**, and *9,830,615*;

- *AlmondNet, Inc. et al v. Meta Platforms, Inc.* (Civil Case No. 4:23-cv-00438-JST)

("Meta II"), involving U.S. Patent Nos. *10,715,878*, *7,747,745*, 7,979,307, *8,204,783*, 8,775,249, *8,959,146*.

14.    In addition, on information and belief, AlmondNet previously directed numerous other licensing communications into this district in connection with its licensing demands for the Asserted Patent families. On information and belief, the cases below were filed after multiple licensing demands and licensing-related communications were sent into this district by AlmondNet and/or its agents. For example:

- *AlmondNet, Inc. et al v. Yahoo! Inc.* (Civil Case No. 1:16-cv-01557-ILG-SMG, E.D.N.Y) ("Yahoo!") involving U.S. Patent Nos. 7,822,639, 7,979,307, 8,244,574, 8,244,582, 8,244,586, 8,494,904, *8,671,139*, **8,677,398**, 8,775,249, *8,959,146*, and *9,508,089*;[2]

- *AlmondNet, Inc. v. Oath Holdings Inc.* (Civil Case No. 1:18-cv-00943-RGA, D. Del.) ("Oath") involving U.S. Patent Nos. 10,026,100 and *9,830,615*.[3]

- *AlmondNet, Inc. et al v. LinkedIn Corporation* (Civil Case No. 1:23-cv-01373-MN, D. Del.) ("LinkedIn") involving U.S. Patent Nos. *10,715,878*, 7,822,639, 7,979,307, 8,244,582, 8,244,586, *8,671,139*, **8,677,398**, 8,775,249, and *8,959,146*;[4]

- *AlmondNet, Inc. et al v. Viant Technology Inc. et al* (Civil Case No. 1:23-cv-00174-MN, D. Del.) ("Viant I") involving U.S. Patent Nos. *11,564,015*, *7,861,260*, 7,979,307,

---

[2]    AlmondNet admitted in its filed complaint that Yahoo, Inc., at the time of the lawsuit, had its principal place of business at 701 First Avenue, Sunnyvale, CA 94089.  Yahoo!, Dkt. 68 (Amended Complaint) ¶6.

[3]    AlmondNet admitted in its filed complaint that Oath Holdings Inc., at the time of the lawsuit, had its principal place of business at 701 First Avenue, Sunnyvale, CA 94089.  Oath, Dkt. 9, Amended Complaint) ¶6.

[4]    AlmondNet admitted in its filed complaint that LinkedIn Corporation has its principal place of business at 1000 West Maude Avenue Sunnyvale, California 94085.  LinkedIn, Dkt. 1 (Complaint) ¶3.

8,775,249, and *8,959,146*;[5]

- *AlmondNet, Inc. et al v. Viant Technology Inc. et al* (Civil Case No. 1:25-cv-00566-MN, D. Del.) ("Viant II") involving U.S. Patent Nos. 10,321,198, **10,839,423**, 11,949,962, **8,200,822**, 8,595,069, and **8,677,398**;[6]

- *AlmondNet, Inc. v. Roku, Inc.* (Civil Case No. 6:21-cv-00876-ADA W.D. Tex) ("Roku I") (later transferred to D. Del. as Civil Case No. 1:22-cv-01540-MN) involving U.S. Patent Nos. 8,244,582, *8,671,139*, and *8,959,146*;[7]

- *AlmondNet, Inc. et al v. Roku, Inc.* (Civil Case No. 6:21-cv-00731-ADA W.D. Tex) ("Roku II") involving U.S. Patent Nos. 10,026,100, 10,321,198, 10,628,857, *10,715,878*, 7,822,639, 8,244,586, 8,566,164, 8,595,069, and **8,677,398**;

- *Roku, Inc. v. AlmondNet, Inc. et al* (Civil Case No. 1:21-cv-01035-MN D. Del.) ("Roku II DJ") involving U.S. Patent Nos. 10,026,100, 10,321,198, 10,628,857, *10,715,878*, 7,822,639, 8,244,586, 8,566,164, 8,595,069, and **8,677,398**;

- *AlmondNet, Inc. et al v. Oracle Corporation* (Civil Case No. 6:24-cv-00303-ADA, W.D. Tex.) ("Oracle") involving U.S. Patent Nos. **8,677,398** and 8,244,582.[8]

15.     On information and belief, in connection with one or more of the litigations identified above, AlmondNet and its agents repeatedly and extensively engaged in pre-suit communications and license negotiations with California entities regarding the Asserted Patents or their family

---

[5]  AlmondNet admitted in its filed complaint that Viant Technology LLC and Viant Technology, Inc. both have their principal places of business at 2722 Michelson Drive, Suite 100 Irvine, California, 92612.  Viant I, Dkt. 1 (Complaint) ¶4.

[6]  AlmondNet admitted in its filed complaint that Viant Technology LLC and Viant Technology, Inc. both have their principal places of business at 2722 Michelson Drive, Suite 100 Irvine, California, 92612.  Viant II, Dkt. 1 (Complaint) ¶5.

[7]  Roku, Inc. has its principal place of business at 1155 Coleman Ave., San Jose, California 95110. Roku II DJ, Dkt. 1 (Complaint) at ¶3.

[8]  Oracle Corporation has "a strong presence in NDCA (including its former headquarters), particularly as to the Accused Instrumentalities."  Oracle, Dkt. 29 (Motion to Transfer) at 3.

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

members, including repeatedly directing licensing demands and licensing correspondence into California for each of the Asserted Patent families.  For example:

- In connection with the *Meta I* action, AlmondNet admitted that "AlmondNet attempted to engage Facebook in negotiations, putting Facebook on notice of the Asserted Patents."[9] Meta I, Dkt. 1 (Complaint), ¶7. AlmondNet also admitted that "On July 24, 2019, AlmondNet sent a notice letter to Facebook asserting the infringement of AlmondNet's patent portfolio and explaining how Facebook could contact AlmondNet to discuss licensing that portfolio. Numerous Asserted Patents and patents related to the Asserted Patents were explicitly identified in that letter, including U.S. Patent Nos. 7,822,639, 7,979,307, 822,639 [*sic*], 8,244,582, 8,244,586, *8,671,139*, ***8,677,398***, 8,775,249, *8,959,146*, *9,508,089*, and *9,830,615*." *Id.*, ¶8.

- In connection with the *Meta II* action, AlmondNet admitted that "AlmondNet attempted to engage Meta in negotiations, putting Meta on notice of the Asserted Patents."[10] Meta II, Dkt. 1 (Complaint), ¶7. AlmondNet also admitted that "[o]n July 24, 2019 and October 25, 2019, AlmondNet sent communications to Meta indicating that Meta infringes numerous patents in AlmondNet's portfolio, and explaining how Meta could contact AlmondNet to discuss licensing that portfolio." *Id.*, ¶8. AlmondNet further admitted that "[d]espite [AlmondNet's] efforts, the parties were unable to resolve the issues raised in the letters and to come to an agreement on appropriate terms for a license to AlmondNet's patents." *Id.*, ¶9.

---

[9]  Facebook, Inc. changed its corporate name to Meta Platforms, Inc. as of October 28, 2021. Meta I, Dkt. 1 (Answer to Complaint) at 1.  Meta's principal place of business is in Menlo Park, California.  Meta I, Dkt. 87 (Order Granting Motion to Transfer) at 2.

[10]  Meta's principal place of business is in Menlo Park, California.  Meta I, Dkt. 87 (Order Granting Motion to Transfer) at 2.

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

- In connection with the *Oath* and *Yahoo!* actions, AlmondNet admitted that "AlmondNet and Oath's predecessor, Yahoo! Inc., had discussions about AlmondNet's inventions in at least 2006, 2013, and 2015." Oath, Dkt. 9 (Amended Complaint), ¶58. AlmondNet also admitted that "[i]n 2015 at least, AlmondNet specifically advised Yahoo of a large number of patents that had issued by that time, including certain patents that were parents to the '615 Patent in the MPS patent family and to the '100 Patent in the OTA patent family, and of AlmondNet's belief that Yahoo's activities and computer systems infringed the MPS and OTA patents." *Id.*, ¶59; *see also Yahoo!*, Dkt. 68 (Amended Complaint), ¶30.

- In the *LinkedIn* action, AlmondNet and LinkedIn Corporation eventually negotiated for a settlement and resolved the claims and voluntarily dismissed the case in June, 2024 as well as related IPR actions. *See, e.g., LinkedIn*, Dkt. 20 (Order Granting Stipulation to Dismiss); IPR2024-00709, Paper 9 (Settlement Prior to Institution of Trial) at 1.

- In connection with the *Roku I* and *Roku II* actions, AlmondNet admitted that "AlmondNet and Defendant [Roku] communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents." *Roku I*, Dkt. 1 (Complaint), ¶¶11, 22, 33, 44, 55, 66, 77, 88, 99; *see also Roku II*, Dkt. 1 (Complaint), ¶¶11, 22, 33, 44, 55, 66, 77, 88, 99.

- In connection with the *Viant I* and *Viant II* actions, AlmondNet sent multiple communications to Viant, including one July 24, 2019 letter sent directly to Viant's CEO at Viant's Irvine address in California, accusing Viant of infringing patents including the accused '398 patent and other patents within the same family as the accused '822 and '423 patents. *Viant II*, Dkts. 1-2 (Ex. 2 to complaint). Furthermore, AlmondNet

admitted in this letter that "[t]he AlmondNet Group has also granted licenses to four other major advertising companies, namely Google, Nielsen, Sizmek, and Tremor Video." *Id.* at 2. Google has its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

- AlmondNet admitted that "[o]n March 28, 2016, AlmondNet sent a communication to Viant identifying how Viant infringes numerous patents in AlmondNet's portfolio, and explaining how Viant could contact AlmondNet to discuss licensing AlmondNet's patent portfolio. AlmondNet and Viant engaged in limited discussions and communications that year and into 2018, but no resolution was reached. On July 24, 2019, AlmondNet sent another communication to Viant again indicating that Viant infringes numerous patents in AlmondNet's portfolio, including the Asserted Patents, and again explaining how Viant could contact AlmondNet to discuss licensing that portfolio. The parties again had brief correspondence following this letter, but no resolution was reached." *Viant I*, Dkt. 1 (Complaint), ¶¶9-10; *see also id.*, ¶¶16, 27, 38, 49.

- AlmondNet admitted that "[o]n July 24, 2019, AlmondNet sent a notice letter to Viant Technology, Inc. identifying how Viant infringes numerous patents in AlmondNet's portfolio, including U.S. Patent Nos. 8,595,069 (including at least claims 1-5 and 8-31), 10,321,198 (including at least claims 1-5 and 8-33), and *8,677,398* (including at least claims 13-17 and 19-26), and explained how Viant could contact AlmondNet to discuss licensing AlmondNet's patent portfolio." *Viant II*, Dkt. 1 (Complaint), ¶¶12-15; *see also id.*, ¶¶20, 30, 40.

16.    To assist with its litigation, demands, and licensing discussions against and with California companies, AlmondNet has also retained California attorneys to prosecute all three of the California cases identified above and to assert the Asserted Patents against TikTok, as well as others.

Indeed, AlmondNet's California attorneys appear on the pleadings in the AlmondNet Delaware Action.

17.    Finally, AlmondNet has also engaged in other systematic contacts with California companies, conducted business in California, and sold or made efforts to sell products and license the Asserted Patents to California residents.  For example, AlmondNet's technical team attended the Interactive Advertising Bureau's ("IAB's") Annual Leadership Meeting ("ALM") in January 2025 in Palm Springs, CA, and AlmondNet advertised this as an opportunity to "meet" on its website, allowing customers to a request a meeting with their key executives, including its Chairman, CTO, VP Business Development, VP Strategy & Partnership, and VP Marketing. **Exhibit E** (https://www.intentiq.com/iab-alm/).  As another example, AlmondNet is registered as a Data Broker in the state of California.    **Exhibit F** (https://oag.ca.gov/data-broker/registration/188926).

18.    Accordingly, for at least the reasons outlined above, this Court has personal jurisdiction over AlmondNet.

19.    In addition, for at least the reasons outlined above, venue is proper in this district under 28 U.S.C. § 1391.  Venue in declaratory judgment actions for noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.  Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides.  Under 28 U.S.C. § 1391(c), an entity with the capacity to sue and be sued, such as AlmondNet, is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction.  Since, for at least the reasons outlined above, AlmondNet is subject to personal jurisdiction in the Northern District of California for purposes of those declaratory judgment claims, venue is also proper here.

20.    Based on at least AlmondNet's allegations in the Delaware case, an immediate, real, and justiciable controversy exists between TikTok and AlmondNet as to whether TikTok is

infringing or has infringed the Asserted Patents.

## **THE ASSERTED PATENTS**

### The '822 Patent

21.     The '822 patent issued on June 12, 2012. The face of the '822 patent identifies Roy Shkedi as the sole named inventor and AlmondNet, Inc. as the assignee.  A copy of the '822 patent is attached hereto as **Exhibit A**.

22.     The '822 patent describes, *inter alia*, systems and methods for "selection of media properties on which to display an advertisement" responsive to a profile of a visitor to a media property, where "a behavioral-targeting company calculates expected profit for an ad correlated with the profile" and "arranges for the visitor to be tagged with a tag readable by the selected media property" if "the calculated profit is positive." '822 patent at Abstract, 6:12-18.

23.     The '822 patent includes independent claims 1, 18, and 35.  Remaining claims 2-17, 19-34, and 36-51 all depend from claims 1, 18, or 35, directly or indirectly.  Independent claim 1 is set forth below:

A method of directing electronic advertisements, the method comprising:

(a) for each of a multitude of different electronic visitors to a first media property, responsive to receiving information about at least one of a plurality of profile attributes possibly applicable to the visitor, automatically electronically authorizing a third-party second media property to allow display, to the electronic visitor when the visitor visits the second media property at a time after the visitor visits the first media property, of an advertisement correlated with the profile-attribute information received about the visitor, subject to a visitor-specific condition for display of the advertisement; and

(b) automatically electronically authorizing a third-party third media

property, for the electronic visitor to the first media property, to allow display, to

the electronic visitor when the visitor visits the third media property at a time after

the visitor visits the first media property, of an advertisement correlated with the

profile-attribute information received about the visitor, for a price charged by the

third media property that is less than a profile-attribute-dependent price that an

advertiser is willing to pay for display of the advertisement.

24.     Independent claims 18 and 35 are substantially identical to claim 1.

<u>The '423 Patent</u>

25.     The '423 patent issued on November 17, 2020.  The face of the '423 patent identifies Roy Shkedi as the sole named inventor and AlmondNet, Inc. as the assignee.  A copy of the '423 patent is attached hereto as **Exhibit B**.

26.     The '423 patent shares a nearly identical version of the specification with the '822 patent. The '423 patent includes independent claims 1, 6, and 11.  Remaining claims 2-5, 7-10, and 14-15 all depend from claims 1, 6, or 11, directly or indirectly.

27.     Independent claim 1 is set forth below:

A method of directing electronic advertisements, performed by a first computer

system comprised of one or more computers, which computer system is controlled

by a first entity, the method comprising:

automatically with the first computer system:

        (a) recording, in a first profile associated with a first computerized device,

which first profile is maintained by the first computer system, behavioral profile

information collected during a visit of the first computerized device to a first

website;

        (b) at a first time, triggered by the visit of a first computerized device to

the first website, causing a second computer system not controlled by the first

entity, which second computer system controls advertising space in a plurality of

video streams, which advertising space is not controlled by the first entity at the

first time, to electronically have access to tag information, without transferring to

the second computer system any of the behavioral profile information in the first

profile collected during the visit of the first computerized device to the first

website, which tag information denotes to the second computer system a

connection between (i) the first profile; and (ii) a second computerized device

used to access video streams;

      (c) electronically transferring to the second computer system a condition

specific to the first profile for allowing delivery of an advertisement to the second

computerized device within advertising space controlled by the second computer

system in one of the plurality of video streams; and

      (d) at a second time, later than the first time, while the second

computerized device is causing display of the one of the plurality of video

streams, following the second computer system checking the condition and

determining that the condition is met, causing a selected advertisement to be

served in the one of the plurality of video streams, which advertisement is based

on the profile information collected during the visit of the first computerized

device to the first website, which profile information is in the first profile that is

associated with the first computerized device and maintained by the first

computer system.

28.     Independent claims 6 and 11 are substantially identical to claim 1.

### The '398 Patent

29.    The '398 patent issued on March 18, 2014.  The face of the '398 patent identifies Roy Shkedi as the sole named inventor and Intent IQ, LLC. as the assignee.  A copy of the '398 patent is attached hereto as **Exhibit C**.

30.    The '398 patent describes, *inter alia*, systems and methods for delivery of advertisements by using "user profile information derived from online activity," including "behavioral targeting or demographic information" from IP addresses that are "electronically associated for a multitude of users," to select a television advertisement to be "directed to the set-top box … associated with that online access IP address." '398 patent at Abstract, 7:66-8:11.

31.    The '398 patent includes independent claims 1, 13, 27, 31, 36, and 40.  Remaining claims 2-12, 14-26, 28-30, 32-35, 37-39, and 41-44 all depend from claims 1, 13, 27, 31, 36, or 40, directly or indirectly.

32.    Independent claim 1 is set forth below:

A method implemented using a programmed hardware computer system, the method comprising:

(a) receiving, at the computer system, an electronic identifier of a first device;

(b) with the computer system, automatically generating and storing electronic indicia of an association between the first device identifier and an electronic identifier of a second device based on automatically recognizing that each of the first and second devices was connected, independently of the other, to a common local area network, wherein the computer system is connected to the local area network through the Internet but is not in the local area network; and

(c) with the computer system, based on the electronic indicia of the association between the first and second device identifiers, automatically sending

an electronic transmission that causes another programmed hardware computer system to take an action, based on first electronic profile data associated with the first device identifier, with respect to the second device, which is indicated at the time of the action by the second device identifier.

33.     Independent claims 27 and 36 are substantially identical to claim 1.

34.     Independent claim 13 is set forth below:

A method implemented using a programmed hardware computer system, the method comprising:

(a) based on first electronic profile data associated with an electronic identifier of a first device, automatically causing, with the computer system, an action to be taken with respect to a second device that is indicated at the time of the action by an electronic identifier electronically associated with the first device identifier;

(b) wherein the electronic association between the first and second device identifiers is based on connection, before the action, of each of the first and second devices, independently of the other, to a common local area network, wherein the computer system is connected to the local area network through the Internet but is not in the local area network.

35.     Independent claims 31 and 40 are substantially identical to claim 13.

## ALMONDNET'S LITIGATION AGAINST TIKTOK

36.     On May 16, 2025, AlmondNet filed a lawsuit in the District of Delaware, the AlmondNet Delaware Action, asserting that TikTok, by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities, infringes the three Asserted Patents.

37.     However, in its complaint, AlmondNet wrongfully states that TikTok Inc. (Entity

#3618203 in Delaware) is a corporation organized under the laws of the state of Delaware—while in fact, TikTok is a California corporation. As a result of its factual error, AlmondNet served the wrong "TikTok, Inc." (Entity #5770395 in Delaware)—an entity that was already dissolved in 2017 and is unrelated to TikTok. A copy of the complaint filed in the AlmondNet Delaware Action is attached as **Exhibit D**.

38. In addition, TikTok is not incorporated in Delaware, nor does it have an established place of business in that state. Accordingly, for purposes of AlmondNet's patent infringement allegations against TikTok, venue is not proper in Delaware.

39. TikTok plans to move promptly to dismiss or transfer the AlmondNet Delaware Action and to allow the Delaware court to decide that motion in the first instance. Should the AlmondNet Delaware Action be dismissed, TikTok respectfully requests that this Court resolve the immediate, real, and justiciable controversy that exists between TikTok and AlmondNet.

40. This case belongs in the Northern District of California, not Delaware. TikTok is not incorporated in Delaware. TikTok is a California Corporation. Given that the majority of TikTok's engineers in the United States work out of the San Jose office, TikTok anticipates that the bulk of the relevant evidence and witnesses in this case will be in this district. Furthermore, the Asserted Patents were also not created in Delaware—the sole named inventor of all three Asserted Patents resides in New York, where AlmondNet's place of business is located at.

### COUNT ONE

**(Declaration of Non-Infringement of One Or More Claims of the '822 Patent)**

41. TikTok restates and incorporates by reference the allegations in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. AlmondNet claims to own all rights, title, and interest in the '822 patent. A true and correct copy of the '822 patent is attached hereto as **Exhibit A**.

43.    TikTok does not directly or indirectly infringe the '822 patent, either literally or under the doctrine of equivalents, at least because its Accused TikTok Instrumentalities:

(1) do not employ, incorporate, or otherwise make use of "authorizing a third-party second media property to allow display, to the electronic visitor when the visitor visits the second media property at a time after the visitor visits the first media property, of an advertisement correlated with the profile-attribute information received about the visitor," as required by every claim of the '822 patent;

(2) do not employ, incorporate, or otherwise make use of "subject to a visitor-specific condition for display of the advertisement that a price charged by the second media property is less than a profile-attribute-dependent price that an advertiser is willing to pay for display of the advertisement" as required by every claim of the '822 patent.

44.    For example, the Accused TikTok Instrumentalities do not authorize displaying of "advertisement correlated with the profile-attribute information" on "third-party second media property," regardless of any "visitor-specific condition" where "a price charged by the second media property is less than a profile-attribute-dependent price that an advertiser is willing to pay."

45.    As another example, the Accused TikTok Instrumentalities do not "automatically electronically authoriz[e] a third-party second media property to allow display … of an advertisement" "responsive to receiving information about at least one of a plurality of profile attributes possibly applicable to the visitor."

46.    A substantial, immediate, and real controversy exists between TikTok and AlmondNet regarding whether TikTok infringes the '822 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities.  A judicial declaration is necessary to determine the parties' respective rights regarding the '822 patent.

47.    TikTok seeks a judgment declaring that TikTok does not infringe, either literally or

under the doctrine of equivalents, one or more claims of the '822 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities, either directly under 35 U.S.C. § 271(a), or indirectly under 35 U.S.C. §§ 271(a) and (c).

## COUNT TWO

**(Declaration of Non-Infringement of One Or More Claims of the '423 Patent)**

48.     TikTok restates and incorporates by reference the allegations in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     AlmondNet claims to own all rights, title, and interest in the '423 patent.  A true and correct copy of the '423 patent is attached hereto as **Exhibit B**.

50.     TikTok does not directly or indirectly infringe the '423 patent, either literally or under the doctrine of equivalents, at least because its Accused TikTok Instrumentalities:

(1) do not employ, incorporate, or otherwise make use of causing "a second computer system not controlled by the first entity, which second computer system controls advertising space in a plurality of video streams, which advertising space is not controlled by the first entity at the first time, to electronically have access to tag information," as required by every claim of the '423 patent;

(2) do not employ, incorporate, or otherwise make use of "tag information denotes to the second computer system a connection between (i) the first profile; and (ii) a second computerized device used to access video streams" as required by every claim of the '423 patent;

(3) do not employ, incorporate, or otherwise make use of transferring "to the second computer system a condition specific to the first profile for allowing delivery of an advertisement to the second computerized device within advertising space controlled by the second computer system" as required by every claim of the '423 patent;

(4) do not employ, incorporate, or otherwise make use of causing "a selected advertisement to be served in the one of the plurality of video streams, which advertisement is based on the profile information collected during the visit of the first computerized device to the first website," as required by every claim of the '423 patent.

51.    For example, the Accused TikTok Instrumentalities do not make use of "tag information [to] denote … a connection between (i) the first profile; and (ii) a second computerized device used to access video streams" in connection with "a second computer system" that is "not controlled by the first entity" and "controls advertising space in a plurality of video streams."

52.    As another example, the Accused TikTok Instrumentalities also do not make use of causing "a selected advertisement to be served in the one of the plurality of video streams" that is "based on the profile information collected during the visit of the first computerized device to the first website" or subjecting to "a condition specific to the first profile for allowing delivery of an advertisement to the second computerized device."

53.    A substantial, immediate, and real controversy exists between TikTok and AlmondNet regarding whether TikTok infringes the '423 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities.  A judicial declaration is necessary to determine the parties' respective rights regarding the '423 patent.

54.    TikTok seeks a judgment declaring that TikTok does not infringe, either literally or under the doctrine of equivalents, one or more claims of the '423 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities, either directly under 35 U.S.C. § 271(a), or indirectly under 35 U.S.C. §§ 271(a) and (c).

## COUNT THREE

### (Declaration of Non-Infringement of One Or More Claims of the '398 Patent)

55.    TikTok restates and incorporates by reference the allegations in paragraphs 1 through

54 of this Complaint as if fully set forth herein.

56.    AlmondNet claims to own all rights, title, and interest in the '398 patent.  A true and correct copy of the '398 patent is attached hereto as **Exhibit C**.

57.    TikTok does not directly or indirectly infringe the '398 patent, either literally or under the doctrine of equivalents, at least because its Accused TikTok Instrumentalities:

(1) do not employ, incorporate, or otherwise make use of generating and storing "electronic indicia of an association between the first device identifier and an electronic identifier of a second device based on automatically recognizing that each of the first and second devices was connected, independently of the other, to a common local area network," as required by claims 1-12, 27-30, and 36-39 of the '398 patent;

(2) do not employ, incorporate, or otherwise make use of "based on the electronic indicia of the association between the first and second device identifiers" sending "an electronic transmission that causes another programmed hardware computer system to take an action, based on first electronic profile data associated with the first device identifier, with respect to the second device, which is indicated at the time of the action by the second device identifier" as required by claims 1-12, 27-30, and 36-39 of the '398 patent;

(3) do not employ, incorporate, or otherwise make use of causing "an action to be taken with respect to a second device that is indicated at the time of the action by an electronic identifier electronically associated with the first device identifier," as required by claims 13-26, 31-35, and 40-44 of the '398 patent;

(4) do not employ, incorporate, or otherwise make use of "electronic association between the first and second device identifiers []based on connection, before the action, of each of the first and second devices, independently of the other, to a common local area network" as required by claims 13-26, 31-35, and 40-44 of the '398 patent;

58.    For example, the Accused TikTok Instrumentalities do not "automatically recogniz[e]" that a "first and second devices was connected, independently of the other, to a common local area network" with "electronic indicia of an association between the first device identifier and an electronic identifier of a second device." The Accused TikTok Instrumentalities also do not make use of "an electronic transmission that causes another programmed hardware computer system to take an action" that is "based on first electronic profile data associated with the first device identifier, with respect to the second device."

59.    As another example, the Accused TikTok Instrumentalities do not make use of causing "an action to be taken with respect to a second device" that is "indicated … by an electronic identifier electronically associated with the first device identifier," where "electronic association" is based on "connection … of the first and second devices, independently of the other, to a common local area network."

60.    A substantial, immediate, and real controversy exists between TikTok and AlmondNet regarding whether TikTok infringes the '398 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities.  A judicial declaration is necessary to determine the parties' respective rights regarding the '398 patent.

61.    TikTok seeks a judgment declaring that TikTok does not infringe, either literally or under the doctrine of equivalents, one or more claims of the '398 patent by making, using, selling, offering for sale, and/or importing the Accused TikTok Instrumentalities, either directly under 35 U.S.C. § 271(a), or indirectly under 35 U.S.C. §§ 271(a) and (c).

## PRAYER FOR RELIEF

WHEREFORE, TikTok prays for judgment and relief as follows:

A.    Declaring that TikTok does not directly or indirectly infringe the Accused Patents, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive

relief based on any claim of the Asserted Patents;

      B.     Declaring that judgment be entered in favor of TikTok and against AlmondNet on each of TikTok's claims;

      D.     Finding that this an exceptional case under 35 U.S.C. § 285;

      E.     Awarding TikTok its costs and attorneys' fees in connection with this action; and

      F.     Such further and additional relief as the Court deems just and proper.

## **JURY DEMAND**

      TikTok demands a jury trial on all issues and claims so triable.

DATED: July 8, 2025          Respectfully submitted,

                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                        By */s/ Patrick D. Curran*
                        Sean Pak (Cal. Bar No. 219032)
                        seanpak@quinnemanuel.com
                        Ognjen Zivojnovic (Cal. Bar No. 254886)
                        ogizivojnovic@quinnemanuel.com
                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                        50 California Street, 22nd Floor
                        San Francisco, California  94111
                        (415) 875-6600
                        (415) 875-6700 (facsimile)

                        Patrick D. Curran (Cal. Bar No. 241630)
                        patrickcurran@quinnemanuel.com
                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                        111 Huntington Avenue, Suite 520
                        Boston, MA 02199
                        (617) 712-7100
                        (617) 712-7200 (facsimile)

                        *Attorneys for TikTok Inc.*

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT